*10*

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>Lazder GILAJ<br>Paljoka CAMAJ | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case:2:12-mj-30149
Judge: Unassigned,
Filed: 03-01-2012 At 04:28 PM
IN RE: SEALED MATTER (CMP)(MRM)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July of 2011 _____ in the county of _Monroe, Oakland, & Wayne_ in the

___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 United States Code 545 | Smuggling items into the United States |
| 18 United States Code 371 | Conspiracy to commit an offense against the United States |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brian Manns HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __3/1/12__

_____
*Judge's signature*

City and state: _____ Detroit, MI _____

Hon. Mark A. Randon, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Brian Manns, being duly sworn, depose and state the following:

1. I am a Special Agent (SA) with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) in Detroit, Michigan, which is located in the Eastern District of Michigan.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), empowered to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516, and have been so employed since August of 2000.  I have been employed by the United States Customs Service and HSI since 1989 as a Special Agent and a Customs Inspector. During my tenure with the U.S. Customs Service and HSI, I have conducted numerous investigations relating to contraband and alien smuggling.  The following information is based upon my own investigation and previous experiences as well as investigations conducted by fellow law enforcement officers and their previous experiences.

2. I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement officers and agents; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation.  I have not included details of every aspect of the investigation, nor do I request that this Court rely on any facts not set forth herein in reviewing this affidavit.

3. In 2004 Homeland Security Investigations (HSI) Detroit, together with the Royal Canadian Mounted Police (RCMP), conducted an investigation into a large scale Eastern European Smuggling Organization who were

1

utilizing numerous methods to smuggle illegal aliens and narcotics across the U.S./Canadian Border and transporting the aliens and narcotics to major metropolitan cities within the United States. As a result of this joint investigation a number of individuals in Canada and the United States were arrested and prosecuted for violating their respective country's alien and narcotic smuggling laws.

4. On August 22, 2006, a co-operating defendant from this joint investigation was interviewed pursuant to the investigation. During the interview the co-operating defendant identified KNOWN SMUGGLER A as an individual involved in alien and marijuana smuggling between Canada and the United States. The co-operating defendant spoke of personally knowing about hundreds of pounds of marijuana that KNOWN SMUGGLER A had smuggled into the United States from Canada and which was transported to Chicago for distribution.

5. In 2009 HSI SAC Detroit initiated another investigation into a large scale Eastern European Smuggling Organization operating between the United States and Canada. Lazder GILAJ was identified as a member of this organization. This criminal organization is known to utilize the Detroit waterways and ports of entry to facilitate their illegal smuggling activities.

6. On March 12, 2010, HSI SA's Leslie Defreitas and Brian Manns spoke with HSI confidential informant (CI) CI-1. CI-1 mentioned Lazder GILAJ as being involved in a criminal smuggling organization. CI-1 stated that GILAJ has a boat that the criminal organization utilizes in the summer time for their smuggling activities. According to CI-1, this organization is involved in all types of smuggling activities along the eastern Canadian/ U.S. border, to include but not limited to narcotic, money and firearms smuggling.

7. In March 2010, HSI S/A's Leslie Defreitas and Brian Manns spoke with HSI confidential and reliable informant CI-2. CI-2 identified an Albanian known as Eddie who, according to CI-2, works with another Albanian known as Simon. According to CI-2, Eddie and Simon charge $3000 or $4000 to smuggle people to Canada from the United States. CI-2 further stated that Simon harbors the aliens prior to them being smuggled to Canada, Eddie then collects the money and once the money is collected Eddie either smuggles the aliens himself to Canada, or arranges for the aliens to be smuggled to Canada by someone else. Agents are aware that Lazder GILAJ is closely associated with individuals named Eddie and Simon who also are involved with smuggling activities for this criminal organization.

8. On July 26, 2010, HSI SA Defreitas received another phone call from HSI confidential and reliable informant CI-1. CI-1 informed this affiant that Lazder GILAJ was storing his boat at a marina in Monroe County, Michigan. CI-1 stated that if this affiant were to take I-75 south from Detroit to exit 26, turn left and follow the road to the end, it would dead end at the marina where Lazder GILAJ's boat is stored. CI-1 further advised this affiant that Lazder GILAJ was friend's with the local workers at the marina and paid them cases of beer to watch his boat for him.

9. From the information provided by CI-1 and other investigative methods, HSI Defreitas identified the marina where GILAJ was storing his boat as the Lake Point Marina, located at 11234 U.S. Turnpike Road, South Rockwood, Michigan. SA Defreitas also identified the boat that GILAJ operated as a brown Rinker boat with Michigan registration 627XXX.

10. On December 10, 2010, SA Defreitas spoke with HSI confidential and reliable informant CI-3 who stated that in December of 2010, he/she spoke with Lazder GILAJ at a coffee shop. According to CI-3, GILAJ told CI-3

3

that GILAJ had made over $300,000 in the year of 2010 smuggling people and marijuana to and from Canada using his boat. GILAJ further advised CI-3 that over the last year he had smuggled marijuana from Canada to the United States on his boat on about 30 occasions. CI-3 stated that GILAJ believes that there is a human smuggling case against him and that U.S. Immigration will be deporting him shortly as a result of this criminal case.

11. On July 8, 2011 at approximately 22:33 hours Paljoka CAMAJ, a citizen and resident of the United States, entered the United States from Canada as the driver and sole occupant of a burgundy Lexus bearing Michigan license plate 9KGXXX. Subsequent computer queries disclosed that CAMAJ had entered Canada on July 8, 2011 at approximately 17:47 hours alone.

12. On July 10, 2011, at approximately 20:00 hours, HSI SA's Defreitas and Manns responded to the Lake Pointe Marina located at 11234 U.S. Turnpike Road, South Rockwood, Michigan, to conduct physical surveillance. At approximately 20:35 hours SA Manns observed an unknown male, subsequently identified by agents as Paljoka CAMAJ, meet with Lazder GILAJ and an unknown older couple (male and female), who appeared to be of eastern European decent. Agents observed GILAJ, the unknown older male and female; and a fourth individual later identified as KNOWN SMUGGLER B board GILAJ's boat. At approximately 20:53 hours GILAJ's boat motored off towards the open waterway with all four individuals on the boat.

13. SA Defreitas observed as GILAJ's boat motored out into the open waterway towards the Canadian coast line. SA Defreitas observed that KNOWN SMUGGLER B was located at the front of the boat (bearing identification 627XXX), with GILAJ piloting the boat and the older Eastern European couple located in the rear seats of the boat.

4

14. During this same time period, SA Manns observed an unidentified male, believed to be Paljoka CAMAJ parked at a parking lot adjacent to the marina, in a dark-colored Lexus bearing Michigan license plate 9KGXXX, CAMAJ appeared to be watching GILAJ's boat and its occupants depart the marina area. SA Manns further observed that CAMAJ appeared to be on a cell phone as he watched GILAJ's boat and its occupants depart in the direction of Canada. SA Manns departed this parking lot and returned to the marina.

15. At 21:20 hours, SA Defreitas located the Lexus bearing MI tags 9KGXXX parked unattended in the same adjacent parking lot. SA Defreitas took over surveillance of the lot and observed an unidentified male, believed to be Paljoka CAMAJ, wearing blue jeans shorts and a grey shirt, sitting on the park bench looking out at the lake alone. At approximately 21:35 hours SA Defreitas observed this unidentified male believed to be Paljoka CAMAJ as he returned to the Lexus and appeared to be using a cell phone. The Lexus was then observed leaving the parking area adjacent to the marina and driving off in the direction of the marina. A short time later GILAJ and KNOWN SMUGGLER B were observed returning in GILAJ's boat without the elderly couple and head towards GILAJ's boat slip. At approximately 22:00 hours SA Defreitas observed KNOWN SMUGGLER A, who was now driving the Lexus, as he left the marina followed by a white work truck bearing Michigan license plate number CGJXXXX believed to be occupied by Paljoka CAMAJ. SA Defreitas followed both vehicles along Huron River Road towards I-75.

16. SA Manns then observed GILAJ, driving a black pick-up truck bearing Michigan license plate number CABXXXX, as he exited the marina and drove west on Huron River Drive a short distance behind KNOWN SMUGGLER A and the white work truck believed to be occupied by

5

Paljoka CAMAJ. SA Manns followed GILAJ to a trailer park located on Huron River Drive where GILAJ was observed dropping off KNOWN SMUGGLER B at a trailer located on the far eastern side of the trailer park.

17. SA Defreitas and SA Manns then followed both the white work truck (bearing Michigan license plate CGJXXXX) believed to be occupied by Paljoka CAMAJ and KNOWN SMUGGLER A in the Lexus (bearing Michigan license plate number 9KGXXX); both vehicles headed north on Interstate-75 in tandem with the white truck in front and KNOWN SMUGGLER A following closely behind.

18. SA Defreitas and SA Manns continued to follow the vehicles as they exited I-75 north onto Rochester Road in Troy. The vehicles then turned onto Big Beaver Road. SA Manns contacted the Troy Police Department and arranged for a uniform police vehicle to conduct a traffic stop on the Lexus.

19. Officer Kramer then detailed to SAs Defreitas and Manns the information obtained during the traffic stop. According to Officer Kramer, the driver was identified from his Michigan driver's license as KNOWN SMUGGLER A. Officer Kramer asked KNOWN SMUGGLER A where he was coming from. KNOWN SMUGGLER A told Officer Kramer that he was coming from his business, located in the City of Detroit, and that he had been there all day and had not visited any other location. Officer Kramer asked and was given consent by KNOWN SMUGGLER A to search the Lexus. During a pat down of KNOWN SMUGGLER A Officer Kramer stated that KNOWN SMUGGLER A was in possession of $130 and a cell phone. Officer Kramer identified KNOWN SMUGGLER A's cell phone number. KNOWN SMUGGLER A also gave the phone number for his business. Officer Kramer's vehicle search revealed a

second cell phone in the arm rest which KNOWN SMUGGLER A denied ownership of, stating that it possibly belonged to his cousin. Also in the vehicle was a set of boat keys, which KNOWN SMUGGLER A stated belonged to him. KNOWN SMUGGLER A admitted that he owned a boat which he stated was located in Port Huron. According to Officer Kramer, during the course of the traffic stop KNOWN SMUGGLER A received several calls from two individuals that KNOWN SMUGGLER A described as his cousins.

20. On July 16, 2011, according to information received from HSI Special Agent Christopher Reyes of HSI Chicago, a white truck observed by Detroit agents on July 10th (bearing Michigan license plate CGJXXXX and referenced above) along with KNOWN SMUGGLER A and an individual believed to be Paljoka CAMAJ were involved in the transportation of marijuana to the Chicago area. Agent Reyes detailed that after DEA and HSI agents observed a black duffle bag being transferred from the white work truck to the Honda pilot with Illinois tags, Chicago police conducted a traffic stop on the Honda Pilot and recovered over 50 pounds of marijuana in the duffle bag. Agents observed that the person conducting the transfer was the passenger of a Black Mercedes with Michigan tags CBEXXXX that was parked nearby. A subsequent computer query revealed that Michigan license plate CBEXXXX is registered to KNOWN SMUGGLER A. Agents allowed the white truck and the Mercedes to depart Chicago.

21. On July 16, 2011, KNOWN SMUGGLER A and Paljoka CAMAJ, were stopped by Michigan State Police in a black Mercedes bearing Michigan tags CGEXXXX and registered to KNOWN SMUGGLER A, traveling on Interstate 94 east in Hartford Township, Michigan. KNOWN SMUGGLER A was identified as the passenger and Paljoka CAMAJ was identified as the driver of the black Mercedes. KNOWN SMUGGLER A

7

and CAMAJ stated that they were on their way back from visiting friends in Chicago. During the course of the traffic stop investigation, approximately $54,155 in U.S. currency was recovered by the Michigan State Police concealed in the trunk of the Mercedes. Both KNOWN SMUGGLER A and CAMAJ denied ownership of the currency which was seized by the Michigan State Police.

22. On August 11, 2011, Federal Agents initiated surveillance on GILAJ at the Lake Pointe Marina. As a result of this surveillance, Canadian law enforcement arrested and subsequently charged Lazder GILAJ after he attempted to smuggle an Albanian citizen who had been ordered deported from the United States into Canada. GILAJ was operating his personal boat with Michigan registration number 627XXX during this arrest by Canadian authorities

23. On August 12, 2011, HSI SA's Manns and Salinas conducted an interview of KNOWN SMUGGLER B at his residence. During the interview KNOWN SMUGGLER B admitted knowing GILAJ, and identified GILAJ from a photo array of six similar pictures. KNOWN SMUGGLER B also stated that GILAJ had introduced him to a guy known to him as KNOWN SMUGGLER A. KNOWN SMUGGLER B also recounted during the interview the smuggling incident that occurred on July 10, 2011, (as referenced above). KNOWN SMUGGLER B admitted that he was on GILAJ's boat when GILAJ transported an elderly couple to Canada. KNOWN SMUGGLER B further stated that upon arrival on the Canadian shore GILAJ turned the couple over to two males who were waiting nearby. According to KNOWN SMUGGLER B these individuals then handed GILAJ two large hockey bags that GILAJ told KNOWN SMUGGLER B to put in the boat. KNOWN SMUGGLER B stated that they transported the bags back to the marina in the U.S. where KNOWN SMUGGLER A instructed KNOWN SMUGGLER B to place them in the

8

rear of a white pick-up truck and KNOWN SMUGGLER B complied. KNOWN SMUGGLER B stated that KNOWN SMUGGLER A then departed the marina in a dark colored Lexus followed by an unidentified male, believed to be Paljoka CAMAJ, driving the pick-up. According to KNOWN SMUGGLER B, GILAJ told KNOWN SMUGGLER B the bags contained clothes; however KNOWN SMUGGLER B did acknowledge to SA Manns and SA Salinas that the bags could have contained marijuana.

24. Based on the foregoing facts, this affiant believes that there is probable cause to believe that Lazder GILAJ and Paljoka CAMAJ have knowingly and willfully, with intent to defraud the United States, smuggled, or clandestinely introduced or attempted to smuggle or clandestinely introduce into the United States any merchandize which should have been invoiced. In violation of Title 18, United States code 545.

25. Based on the foregoing facts, this affiant also believes that there is probable cause to believe that Lazder GILAJ and Paljoka CAMAJ have with two or more persons conspired to commit an offense against the United States, or to have defrauded the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy. In violation of Title 18, United States code 371.

_____
Brian Manns, Special Agent

Sworn to before me and subscribed to me in my presence this ___1st___ day of March, 2012

_____
Honorable Mark A. Randon
United States Magistrate Judge

9